IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

JOSE ENRIQUE ARROYO HUDSON,                    3:09-CV-1146-MA

        Plaintiff,                           OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

        Defendant.

DAVID B. LOWRY
9900 S.W. Greenburg Road, Ste 130
Portland, OR 97223
(503) 245-6309

        Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003
KATHRYN A. MILLER
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
(206) 615-2240

        Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge.

Plaintiff seeks judicial review of the Commissioner's final decision denying his February 2005, application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.  Plaintiff urges the court to remand this matter to the Commissioner to reassess medical evidence relating to his mental impairments and resulting workplace limitations.

For the following reasons, I **REVERSE** the Commissioner's final decision and **REMAND** this matter to the Commissioner for further proceedings to develop the medical record regarding the impact of plaintiff's psychological impairments on his ability to engage in substantial gainful activity.

<u>**BACKGROUND**</u>

Plaintiff asserts he is unable to work because of a right eye injury and "residuals" from a gunshot wound to his back.

On May 15, 2007, plaintiff and a vocational expert (VE) testified in a hearing before an administrative law judge (ALJ).

On July 11, 2007, the ALJ issued a decision that plaintiff is able to perform past relevant work and is not disabled.

On July 31, 2009, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, is the final decision of the Commissioner for purposes of judicial review.

2 - OPINION AND ORDER

**THE ALJ'S FINDINGS**

The Commissioner has developed a five-step sequential inquiry to determine whether a plaintiff is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).  <u>See also</u> 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since June 21, 2002.

At Step Two, the ALJ found plaintiff has severe impairments including a splenectomy, subtotal pancreatectomy, and right eye injury from a gunshot wound in 1997, and hypertension.  20 C.F.R. § 404.1520©.  The ALJ also found plaintiff has non-severe "anger problems, depression, and loss of focus" for which plaintiff has not sought any treatment.

At Step Three, the ALJ found plaintiff's impairments did not meet or equal a listed impairment.

The ALJ found plaintiff retains the residual functional capacity to perform a limited range of light work.

At Step Four, the ALJ found plaintiff is able to perform his past relevant sedentary job as a phone answerer and cold caller, front desk clerk, and receptionist.

Based on the above Findings, the ALJ found plaintiff is not disabled and, accordingly, is not entitled to DIB or SSI.

3 - OPINION AND ORDER

## LEGAL STANDARDS

The plaintiff has the initial burden to prove he is disabled. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the plaintiff must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's final decision must be affirmed if it is based on proper legal standards and the ALJ's findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all the evidence whether it supports or detracts from the Commissioner's final decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The court must uphold the decision, however, even if it concludes that evidence "is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

4 - OPINION AND ORDER

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The Commissioner's duty to further develop the record is triggered if the evidence is either ambiguous or inadequate to allow for a proper evaluation. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for an immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff contends the ALJ (1) failed to develop the record as to plaintiff's psychological impairments; (2) failed to give specific and legitimate reasons to reject the medical opinion of an examining physician; (3) failed to give germane reasons for not crediting lay testimony of plaintiff's mother; (4) failed to formulate plaintiff's residual functional capacity (RFC) accurately; and (5) erred in finding plaintiff was capable of performing his past relevant work.

## EVIDENCE

The court has reviewed the administrative record that includes hearing testimony, plaintiff's work/earnings history reports, lay witness evidence, and relevant medical records.

**Plaintiff's Testimony**.

On the hearing date, plaintiff was 33 years old and lived with his mother.

Employment Background.

Plaintiff's last full-time job was at a private athletic club in June 2002.  He was terminated because he argued with a supervisor and had problems in general.  After that, he worked in various temporary jobs, as a lifeguard (he was terminated because he failed the required swimming and treading water tests), call center operator/resort receptionist (he quit because he was could not meet the standing requirements for the job), utensil sorter (he quit after he had problems with a supervisor) and finally, again as a call center operator (he was terminated  because he was unable to work without supervision).

He does not believe he can perform any work even though some employers have made special accommodation for him over the years.

Physical Impairments.

In 1997, when he was 23 years old, plaintiff was shot in the arm, back, and eye.  He now has difficulty with peripheral vision, headaches, and pain in his lower spine and hip.

6 - OPINION AND ORDER

<u>Daily Activities/Hobbies</u>.

Although he has an Associates Degree in electronics engineering, plaintiff has difficulty with mathematics and reading because he has difficulty maintaining his concentration since the shooting.

Plaintiff occasionally drives during daylight but not at night because of his poor vision.  He has difficulty sitting for longer than 15-20 minutes, standing for longer than 30 minutes, or walking more than two blocks.  He needs assistance when he descends stairs.

Plaintiff has difficulty eating and no longer drinks alcohol because the shooting damaged his spleen and pancreas.  His daily activities are limited by incapacitating severe headaches (8 on a 1-10 scale) that occur three-four times a week for between 15 minutes and one hour, dizziness that lasts for up to 15 minutes at least twice a week, and muscle spasms in his lower back that last for 10-15 minutes two-three times a day.

Plaintiff's memory and ability to pay attention and concentrate are impaired.  His diet is restricted and if he eats something he should not, he becomes physically sick and must lie down for up to 90 minutes.

Plaintiff's previous employers accommodated his physical impairments and inability to concentrate by giving him extra breaks.

Plaintiff's mother helps him with household chores, shopping, and laundry.  His hobbies used to include playing chess, swimming, and playing pool.  He is no longer able to concentrate sufficiently to play chess.  He is able to float but not swim.  He can no longer lift anything with his right arm. He would need help to raise up if he was on his knees, and he no longer is able to reach up or crawl.  He recently tried to mow the lawn but could not do so because of arm and back pain.

Plaintiff's speed and/or pace in performing tasks is only 40% of what it was in the past.  His pain level on a 1-10 scale is 6 on the best and 9 on the worst of days.

Plaintiff has anger management issues that crop up once or twice a week and which have cost him more than 10 jobs.  His memory and ability to concentrate and pay attention are poor, and he experiences crying spells two-to-three times a week that last for hours.

**Lay Witness Evidence**.

In March 2005, plaintiff's mother, Tawana Arroyo, wrote that plaintiff is restless and has leg cramps and backaches; he used to cook but now becomes tired and achy when doing so; his hobby is watching television; he attends church on Sundays and sometimes on Wednesday evenings; he used to be very active with friends but now rarely talks to them; he has difficulty lifting,

squatting, and bending; his attention span is limited to 10-20 minutes; he loses his train of thought and forgets things; he is unable to sit for very long, and has pain when he kneels or climbs stairs.  He is under stress because he is unable to work.

In a May 2007 questionnaire, plaintiff's mother further opined that plaintiff has moderate difficulties in daily living activities, including maintaining concentration, persistence or pace, and marked difficulties in social functioning.  Whereas he used to be active with sports and doing yard and housework for his mother, he now becomes frustrated because of pain.  He used to be happy all the time but he now seems "angry and unhappy."

**Vocational Expert Evidence**.

VE Gail Young testified that plaintiff's past relevant work included semi-skilled sedentary work as a receptionist answering telephones, semi-skilled light work as a front-desk clerk and lifeguard, skilled medium work as a newspaper press operator, unskilled light work as an electronic technician, and unskilled medium work as a hand-packer.

The VE opined plaintiff could perform his past relevant work as an electronic technician based on the ALJ's hypothetical that plaintiff was capable of performing light work that required stretching a few minutes every hour whether sitting, standing, or in place, and did not require fine vision.

The VE also opined plaintiff would be able to perform the jobs of front desk clerk, receptionist, information clerk, and appointment clerk, if he had the ability to lift and carry 25 lbs occasionally and 10 lbs frequently, stand for three hours with breaks every hour for a few minutes, and sit for two hours at a time.  He would not be able to perform such jobs, however, if they exposed him to heights and hazards or required him to have fine vision.  The VE further opined that each of those jobs was available in substantial numbers in the regional and national economies.

Finally, the VE opined that if plaintiff was unable to work a full work day or work two or more normal work days a month, he would be unemployable.  Plaintiff would also be unemployable if he had the following limitations:  Unpredictable anger control problems twice a week that might last for minutes or hours; headaches occurring 3-4 times a week for between 15 minutes and one hour; occasional crying spells occurring unpredictably two-three times a week and lasting for hours; and a tendency to fall down once or twice a week.  Finally, if plaintiff needed to stand for 3 hours and sit for 2 hours in an 8-hour day, he would not be able to perform any of the jobs discussed above.

**Medical Evidence - Treatment**.

Oregon Health Sciences University Hospital.

In April 1997, plaintiff was admitted to the hospital after he was shot at point blank range with a small caliber weapon in right side of his back, causing a left adrenal hematoma, splenic artery laceration, stomach laceration, diaphragmatic tear, and non-bleeding liver laceration. He underwent a pancreatectomy to remove the bottom half of his pancreas, repair of his gastric lacerations, a splenectomy, and repair of his diaphragm. His post-operative prognosis was good.

In May 1997, plaintiff underwent an exploratory laparotomy and drainage of a left upper quadrant abscess.

In July 1997, plaintiff was doing well and requested the removal of a remaining bullet fragment.

In July 1998, plaintiff was treated for right hip pain from an automobile accident four months earlier. He had previously received chiropractic treatment to his left hip, but the pain had shifted to his right hip. He was diagnosed with mechanical right hip pain. The treating physician opined the pain could be treated by stretching exercises and anti-inflammatory medication.

In September 1998, plaintiff was treated for low back pain and tightness in his right hip and as a result, had been unable to play tennis or golf. Anti-inflammatory medication and muscle relaxers had not been effective.

**Medical Evidence- Examination**.

John H. Ellison, M.D. - Internal Medicine.

Dr. Ellison examined plaintiff on the Commissioner's behalf. Plaintiff described his gunshot wound, stating he recovered well from his back and abdominal wounds but developed increasing discomfort and tightness in the abdominal wall when he lifted or strained in any manner. He was unable to eat much roughage or sleep in any position except on his back. He worked as a press operator until his abdominal pain became too severe.

A musculoskeletal examination was negative except for Osgood-Schlatter's disease (knee pain commonly found in young athletes). Plaintiff's tibia was "a little tender" but did not "bother him much." He had occasional pain swallowing and mild headaches. His range of motion in all areas was within normal limits and his neurologic examination was normal except for the absence of lateral vision on his right side resulting from the gunshot wound. He was not depressed.

Dr. Ellison opined plaintiff had the residual functional capacity to stand for one hour at a time for a total of three hours in an eight-hour workday, walk four to five blocks, sit for two hours, and lift and carry 10 lbs frequently and 25 lbs occasionally with discomfort. His hearing, speaking, and handling abilities were not limited. He would need to move around after being stationary for 20-30 minutes.

12 - OPINION AND ORDER

**Medical Evidence - Consultation.**

    Linda Jensen, M.D. - Physical Medicine.
    William Habjan, D.O. - Family Practitioner.

    Dr. Jensen and Dr. Habjan each reviewed plaintiff's medical records and opined plaintiff had no exertional, postural, manipulative, or communicative limitations. His only visual limitation was a lack of peripheral vision in his right eye, and his only other limitation was a need to avoid concentrated exposure to heights and hazards because of his right eye impairment. Dr. Jensen gave no weight to Dr. Ellison's opinion because it was based on plaintiff's only partially credible subjective complaints.

## ANALYSIS

1. **Record as to Psychological Impairments.**

    Plaintiff contends the ALJ erred in failing to develop the medical record regarding his psychological impairments, including an inability to concentrate and pay attention, anger management issues, and depression that involves lengthy crying spells.

    The Commissioner responds that "none of the medical records reflect any mental impairment-related problems" and plaintiff first raised issues relating to anger-management at the hearing, not in his applications. The ALJ also noted the lack of evidence that plaintiff was ever evaluated, diagnosed, or treated for a psychological impairment. On that record, the ALJ found

13 - OPINION AND ORDER

plaintiff did not have a severe psychological impairment.

Plaintiff argues that, on this record, the ALJ erred in finding he did not have a severe psychological impairment solely on the basis that he did not seek mental health treatment.  He points out he had no health insurance.  I agree.  See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996), citing Blankenship v. Bowen, 874 F.2d 1116 (1124 (6th Cir. 1989)("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

In his hearing testimony, plaintiff stated he had anger management issues once or twice a week as a result of which he had lost more than 10 jobs.  He also testified his memory and ability to concentrate and pay attention were poor and he had crying spells two-to-three times a week that lasted for hours.

The court concludes the ALJ should have further developed the medical record as to plaintiff's psychological impairments and the potential impact of those impairments on his ability to engage in substantial gainful activity.  In light of the Ninth Circuit's admonition in Nguyen, as well as the lay evidence (see below) as to plaintiff's psychological impairments, the Court concludes the Commissioner's reliance on plaintiff's failure to seek treatment for those impairments as a reason not to credit either their existence or their severity is unpersuasive.

2. **Lay Witness Evidence**.

Plaintiff contends the ALJ failed to give germane reasons for not crediting the lay witness evidence offered by his mother.  I agree.

Lay witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Plaintiff's mother offered evidence that plaintiff can pay attention for 10-20 minutes and half-an-hour sometimes, and he does not follow instructions if they are too long because he loses his train of thought.

The ALJ rejected the evidence from plaintiff's mother on the ground there was no evidence plaintiff suffered from any psychological impairment.  To the contrary, as set forth above, plaintiff's testimony at the hearing raised a substantial issue as to whether he has psychological impairments that may impede his ability to sustain work involving substantial gainful activity.

On this record, I conclude the ALJ did not give a germane reason for rejecting the lay evidence offered by plaintiff's mother as to whether plaintiff's psychological impairments may impede his ability to engage in substantial gainful activity.

15 - OPINION AND ORDER

3.  **Examining Physician's Opinions**.

Plaintiff contends the ALJ improperly rejected Dr. Ellison's opinion that plaintiff was only able to stand for one hour at a time for a total of three hours during an eight-hour workday, walk four-to-five- blocks, and sit for two hours.

"[T]he Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician . . . . [T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons. . . ." Turner v. Commissioner, 613 F.3d 1217, 1222 (9th Cir. 2010), citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir.1995)(quotation marks omitted).

The ALJ found Dr. Ellison's opinion as to plaintiff's physical limitations is not supportable because Dr. Ellison also stated his examination of plaintiff's lower extremities was normal.  Plaintiff, however, asserts Dr. Ellison found he had "abdominal pain and tenderness possibly caused by adhesions." According to plaintiff, those findings in fact supported Dr. Ellison's sitting, standing, and walking limitations.

Dr. Ellison does not specifically identify the medical impairments that cause the physical limitations he assigns to plaintiff and, therefore, this court is unable to discern why Dr. Ellison assigned standing, walking, and sitting limitations.

Given this lack of clarity, I conclude the ALJ did not give specific and legitimate reasons for rejecting Dr. Ellison's opinion but the record also is not clear as to whether plaintiff's abdominal adhesions are a cause of his physical limitations.

**4.    Residual Functional Capacity (RFC) Hypothetical.**

In his hypothetical to the VE, the ALJ did not include any limitations based on plaintiff's purported psychological impairments.    For all of the reasons stated above, I conclude the hypothetical the ALJ posed to the VE was inadequate to the extent plaintiff may have psychological impairments that would affect his ability to engage in substantial gainful activity.

**5.    Plaintiff's Past Relevant Work.**

For the reasons stated above, I conclude the ALJ's finding that plaintiff has the ability to perform past relevant work as a phone answerer and cold caller, front desk clerk, and receptionist is not supported by substantial evidence based on the record as it now stands.

**REMAND**

On this record, the court in the exercise of its discretion concludes this matter should be remanded to the Commissioner for further proceedings.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).

During the remand, the Commissioner shall (1) further develop the medical record as to plaintiff's psychological impairments, and (2) obtain clarification from Dr. Ellison as to whether plaintiff's abdominal adhesions are a cause of plaintiff's alleged standing, walking, and sitting limitations. Based on this further development of the record, the Commissioner shall reevaluate whether plaintiff has the ability to engage in substantial gainful activity and, if so, what activity.

## CONCLUSION

For these reasons, the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings as set forth above.

IT IS SO ORDERED.

DATED this 15 day of July, 2011.


  /s/ Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge